[Civ. No. 126. Fourth Appellate District.—July 26, 1930.]

ROBERT L. OLDEN, Respondent, v. BABICORA DEVELOPMENT COMPANY et al., Appellants.

400

Athearn, Chandler & Farmer, Frank R. Devlin, Nathan Moran, Philip H. Angell, Harvey & Heard and Lawler & Degnan for Appellants.

Webster & Lyon and Borton & Petrini for Respondent.

BARNARD, J.—This is an action for damages for personal injuries received by plaintiff while riding as a guest in an automobile. The accident occurred on what is known as the Cholame Lateral, a part of the state highway connecting Paso Robles with Bakersfield, on February 1, 1928, at about 7 o'clock in the evening. On the morning of that day, defendant Eddleman, an employee of the defendant Babicora Development Company, had gone some fourteen miles from where the accident occurred to get seven head of cattle owned by the Babicora Development Company, in order to turn said cattle into a field near the scene of the accident. During the last five miles of his return trip, Eddleman had driven the cattle along this highway in a westerly direction. He testified that he was riding a horse, and that the cattle had been, most of the time, to the left of the center of the highway as he proceeded westerly. No other herder was present. He was proceeding in this manner when the cattle met the car in which the plaintiff was riding. At the scene of the accident, the highway is practically straight with a right of way 60 feet wide, bounded by a barbed-wire fence on both sides, and the fall is to the eastward, with grades changing from level to 1.4 and then 2.8 per cent. There is a slight bank of one and one-half feet in height on both sides of the traveled portion of the highway, which portion is 40 feet wide. The foreman of the defendant company testified that the surface of the road is a sort of decomposed brown shale, graded up, and that traveling over it had made a little loose gravel on top of it.

Plaintiff, with several relatives, had left Paso Robles about 5 o'clock on the afternoon of that day in an automobile, for the purpose of visiting relatives in Kern County.

The car was driven by La Verne Payne, and plaintiff was riding on the front seat with the driver. In due course the party met the cattle being driven by Eddleman. According to the evidence the car was proceeding at a rate of speed of from 35 to 40 miles per hour. When the car arrived within from 60 to 125 feet of the cattle, the occupants of the car saw something ahead which appeared to be at a considerable distance ahead, and which they took for a group of parking lights on other automobiles. What they actually saw was the reflection from the lights of the car shining in the eyes of cattle. Almost instantly the plaintiff recognized it was cattle and called, "Cattle!" No one in the car knew the number of cattle in the herd. Payne immediately pulled his car to the right of the road, at the same time applying the brakes. This causing the wheels to slide, he "left off the brakes" and being then too close to the cattle to stop, and seeing what appeared to be an opening among the cattle to the left-hand side of the road, he swung his machine to the left toward this apparent opening, and just as he arrived there one of the animals turned directly in the path of the car. To avoid hitting the steer he turned suddenly toward the fence, and, as he testified: "in the excitement and on the spur of the moment, not being able to notice how high the bank was, thought I could go through the fence, but the car hit the bank, the front, the slope of the road and the momentum of the car turned it completely around and heading it in the opposite direction. The door of the car flew open and with the impact the bank tore— hit the bank of the road as the car tipped and tore off door off and Mr. Olden out on the ground." Plaintiff was thrown from the car and sustained severe injuries. Just before the impact, the horse ridden by Eddleman, apparently frightened by the headlights or the noise of the brakes, turned and ran back down the highway away from the cattle, and when Eddleman got him under control and rode back, the car had come to a stop. There was evidence that it was dark and partially cloudy at the time of the accident.

The plaintiff charges negligence on the part of the defendants in driving the cattle along the highway after dark, in a negligent, careless, reckless and unlawful manner and without having a sufficient number of herders on duty

to keep the road open, so as to permit the passage of vehicles thereon. The answers of both defendants deny negligence and set up as separate defenses that the proximate cause of plaintiff's injuries was the negligent and reckless manner in which the automobile was being driven at the time of the accident, and the fact that it was being driven at an excessive rate of speed; and also set up a claim of contributory negligence on the part of the plaintiff. The jury returned a verdict in favor of the plaintiff, and from the ensuing judgment this appeal is taken.

The first question raised is as to the negligence of the appellants. It is earnestly insisted that it must be held, as a matter of law, that they were not negligent. Various authorities are cited upon the proposition that they had a right to drive cattle along the highway, and upon the duty of the driver of a motor-car to drive with due care in view of all existing circumstances. While these principles of law may not be questioned, it is also true that a certain duty and obligation rests upon one who drives cattle over a highway at night, and we think this duty calls for the exercise of a higher degree of care in these days of the common use of automobiles, than would have been the case in the days of horse-drawn vehicles. As appellants insist, the respondent may not recover unless he shows that they have breached some legal duty they owed to him. As the Supreme Court says in *Powers* v. *Raymond,* 197 Cal. 126 [239 Pac. 1069, 1070]:

" . . . The mere fact of injury under the circumstances here shown did not raise a presumption of negligence. . . . Whether negligence *can* be inferred from the evidence is a question of law for the determination of the court, but whether it *ought* to be inferred is a question for the jury." (Italics ours.)

So, in this case, if negligence can be inferred from the evidence, then that phase of the case is plainly one of fact for the jury. Appellants insist that the only negligence of which they could possibly be charged would be a violation of the terms imposed upon them by section 151 of the California Vehicle Act, as amended in 1927, and that the evidence conclusively shows that they fully complied with that section. The portion of that section applying here, reads as follows:

"No person shall feed, pasture, camp or drive any such live stock upon, over or across any public highway between the hours of sunset and sunrise without keeping a sufficient number of herders on continual duty to open the road so as to permit the passage of vehicles." (Stats. 1927, p. 1440.)

The first duty owed by appellants, under this section, was to have a sufficient number of herders on continual duty, to open the road so as to permit the passage of vehicles. Was this duty complied with? The statute seems to imply that a larger number of herders may be required at night than in the daytime. This number would probably vary with the number of stock being moved on the highway, and with varying physical conditions and circumstances. Conceding that one herder is ever sufficient at night, can we say as a matter of law, that one was sufficient under the circumstances existing here? It appears to us that this is a question of fact, rather than one of law. It would seem also that this statute plainly requires not only that a sufficient number of herders be on continual duty to open the road, but that these herders should open the road. If they are not required to do this immediately, they should do so within a reasonable time, and in any event, they would be required to make a reasonable effort to do so. Perhaps appellants did this, and did all that should have been done by a reasonable person under the circumstances, but, in our opinion, this also is a question of fact. In the case of *Ficken* v. *Jones,* 28 Cal. 618, the court said:

"It is a matter of importance to understand what is the rule in respect to the degree of care and diligence which parties engaged in driving cattle, reared in the rural portions of the country, through the streets of a populous town or city must observe and exercise, in order to prevent the happening of injuries to those lawfully in such streets, and necessarily exposed to dangers which they may not have the power to avert, and from which there may be no way of escape. It is impossible for a person acquainted with the disposition of cattle raised upon farms or in the open country, notwithstanding they may be what are commonly known as tame cattle, to be oblivious to the fact, that when brought into and conducted through highways of a city, they are apt to become alarmed and excited by the pres-

ence of many people, and at the sight of new and strange objects, and by the noise and confusion around them on every side. From such exposure cattle often become wild and difficult of management, and not unfrequently some of them become fierce from fright, if not so before then, and dangerous to people who may not be aware of their presence. . . .

"The driving of cattle through the streets of a city is attended with danger to persons who are of right there, and who can justly demand that the care, diligence and skill essential to their safety shall be commensurate with the necessities of the case."

In the case of *Roberts* v. *Griffith Co.*, 100 Cal. App. 456, 460 [280 Pac. 199], it is said:

"Anyone who has had experience with animals in herds or bands, however docile they may ordinarily be, must know the danger attendant upon frightening, alarming or startling them, and must equally know that it is impossible to foretell what trifle may throw them into a stampede."

In the instant case, the evidence shows that Eddleman was a cowboy of some years' experience. It seems impossible that such a person could be oblivious to the fact that cattle are apt to become alarmed and excited by automobiles, and that their reaction to passing machines on a highway is apt not to be totally different from their response to the terrors of a city street. Just what precautions Eddleman should have taken and whether his conduct under the circumstances, met the reasonable man test, are questions of fact, and these questions cannot be decided in favor of the appellants, as a matter of law. While appellants argue that the only duty they owed was that imposed by the section of the California Vehicle Act just quoted, we feel that their responsibility can hardly be thus limited. That statute is a part of the law providing for the use of vehicles upon the streets, and that portion of the statute was intended to make the roads safer for the use of vehicles, but it does not include all of the law affecting one who is driving cattle along the highway. It adds a further obligation when that act is performed at night, but it does not do away with the general rules of negligence applying at all times. Appellants insist that the evidence shows the road was actually open. There was evi-

dence that as the machine approached, the road appeared to be completely blocked; that when the driver attempted to go to the right, he found the road closed; that he saw or thought he saw an opening on the extreme left-hand side but when he got to it, it was again blocked. Eddleman testified that as the machine was approaching, most of the cattle were to the left of the center of the road, and that he was engaged in trying to drive two animals from his right-hand side of the road to the left-hand side, when his horse became scared. It cannot be held as a matter of law, that the evidence shows that the road was open. In considering the duty of the herder to open the road, and whether he made a reasonable effort to do so, it is necessary to consider that he testified that he first saw the lights of the machine 900 feet away. Whether he should have seen them earlier under the circumstances described by the witnesses, or whether he did all he could after he did see them, are questions of fact and not of law.

Another question of fact arises in connection with what he actually did do. He testified that most of the cattle were to his left of the center of the road, but that when he saw the lights he rode up to his right of two cows that were on his right-hand side of the road. When asked why he did this, he replied:

"A. Well, naturally to put them all on that side of the road; there was plenty of room for the cattle to get plumb off the road if I could have put them over there, you see.

"Q. Did you put them over there?

"A. No, there was two on the road. About the time I got up there the car, the brakes of the car squeaked and scared my horse."

It will be recalled that the driver of the automobile was unable to get through on his right side of the road, and then turned over to an opening he thought he saw at the left, and just as he got there, a cow came broadside into his pathway. The jury could have drawn the inference from these two portions of the testimony that this cow was one being driven by Eddleman over to the plaintiff's right-hand side of the road. If he was deliberately driving the cow to the wrong side of the road in the face of the approaching automobile, it may have been negligence. We cannot say as a matter of law, that it was not. The trial

court properly held that under all these circumstances, negligence could be inferred on the part of the defendant, and properly left to the jury whether or not such negligence ought to be inferred. The law forbids cattle being driven on a highway at night at all, unless this section 151 is complied with. Even if that section was complied with, the general laws of negligence apply. Unless we can say that no other conclusion was possible from the evidence, and the legitimate inferences to be drawn therefrom, than that the defendant Eddleman had fully complied with all of these laws, we cannot hold as a matter of law, that he was free from negligence. We feel that reasonable minds might differ upon this and that the entire matter was a question of fact to be left to the jury. This is especially true in these days of automobiles, and in view of common experience which has led to laws requiring lights both in front and behind vehicles on the highway, whether standing or moving. Although for obvious reasons lights are not required on cattle, the reasons behind the requirement of lights on other objects illustrate that the entire situation here was one that called for a very high degree of care on the part of the party driving cattle on the highway, as well as the party driving the automobile. And this common experience is an additional reason why an inference might be drawn by reasonable minds from the evidence herein, that appellants had not measured up to the degree of care required by the particular circumstances.

█ In discussing the question of whether the evidence established any negligence on the part of the defendants, appellant argues that the court erred in admitting, over the objection of defendant Babicora Development Company, testimony from the occupants of the automobile that immediately after the accident, Eddleman had stated ''I'm sorry. It is all my fault. I shouldn't have had cattle on the road at that time of night.'' The claim is made that this statement was made after the accident and was not part of the *res gestae*. The evidence shows that when the car came to a stop the respondent was thrown to the ground; that the other occupants of the car immediately got out and were attempting to render first aid as he lay in the dirt; that a little boy was crying, and all of them were much excited; and that while they were attempting to

render first aid, Eddleman came up on his horse and made the statement referred to. Appellants rely on the case of *Baker* v. *Western Auto Stage Co.,* 48 Cal. App. 283 [192 Pac. 73], as authority that this was not admissible as against defendant Babicora Development Company, and as a part of the *res gestae.* In that case, the court held certain statements made by the driver of defendant's autobus was not a part of the *res gestae.* The evidence there showed that the statements were made to an outsider who came upon the scene shortly after the accident. How long after does not appear. But in that case the court also held that no harm resulted from the admission of the statements, because the statements accorded substantially with the driver's testimony on the witness-stand. In *Williams* v. *Southern Pac. Co.,* 133 Cal. 550 [65 Pac. 1100, 1102], the court says:

"Expressions of persons who are actors, made during the occurrence, may generally, but not always, be proved. If spontaneous and caused by the event, they may nearly always be shown. But if, afterwards, no matter how shortly afterwards, there is an attempt to explain what has happened, or to account for it, or to defend one's self, or the like, it is incompetent, and inadmissible as *res gestae.* A narrative, even if given during the occurrence, is inadmissible."

The statement here in question was spontaneous and caused by the event, was not narrative, and was not produced with an idea of manufacturing evidence. In *Rhodes* v. *Firestone Tire etc. Co.,* 51 Cal. App. 569 [197 Pac. 392, 394], the court held without merit "the claim that the court committed error in admitting in evidence the statement of the driver of defendant's truck, made practically simultaneously with the accident, and therefore properly considered by the trial court to be a part of the *res gestae.*" In *Zipperlen* v. *Southern Pac. Co.,* 7 Cal. App. 206 [93 Pac. 1049, 1055], the court said:

"The question addressed to the fireman by the engineer, in the presence of Mrs. Zipperlen, immediately following the accident, 'Why didn't you tell me to stop?' was asked so near the time the accident occurred as to make it a part of the transaction, and therefore admissible under the rule of *res gestae.* The mere fact that the accident preceded the

question does not necessarily take it out of that rule."
(See, also, *Heckle* v. *Southern Pac. Co.*, 123 Cal. 441 [56
Pac. 56].)

In *Duran* v. *Yellow Aster Min. etc. Co.*, 40 Cal. App. 633,
[181 Pac. 395, 397], the court said:

"The second exception relates to a question asked of
plaintiff's witness Kelly as to whether or not he, at a time
after the accident when plaintiff was seeking to use a rake,
heard plaintiff utter any exclamation. Defendant objected
to this upon the ground that it called for a self-serving,
hearsay declaration, and was incompetent, but the court
overruled the objection on the theory that the plaintiff was
calling for a spontaneous exclamation, and the witness an-
swered that the exclamation was, 'My God, it hurts.' There
was no error in overruling this objection."

In *Elledge* v. *National City & O. Ry. Co.*, 100 Cal. 282
[38 Am. St. Rep. 290, 34 Pac. 720, 852], the court approved
the admission of an exclamation immediately after an acci-
dent from an agent of the defendant, showing he had knowl-
edge of the dangerous condition existing. We conclude
that under all of the circumstances here the statement was
admissible. ■ In any event, the error, if any, was not
sufficient to justify a reversal of the judgment. The de-
fendant Eddleman, while on the witness-stand, testified to
facts from which, as we have held, the jury was justified
in drawing the inference that it was his fault. The first
time the question of this statement came up it was ob-
jected to by defendants as incompetent, irrelevant and im-
material, and not binding on the defendant Babicora De-
velopment Company. The court said "Overruled; that is,
it is overruled subject to motion to strike when I find out
what is and who he is, Judge Farmer, at the present time
it will be admitted." After the statement had been related,
but before it was disclosed who made it, a motion to strike
out the statement was made, and denied. Later, when de-
fendant Eddleman was on the stand, a written statement
made by him at some time prior to the trial was offered in
evidence, which included this same statement. It was of-
fered both for impeachment and as a declaration binding
upon the witness and the other defendant. It was then
objected to as not binding upon the defendant Babicora
Development Company. Upon counsel for plaintiff practi-

cally conceding the force of the objection, the court admitted it as to the defendant Eddleman alone, and thereupon the following occurred:

"The Court: Ladies and gentlemen, this particular piece of evidence that is now to be read to the jury may be considered as evidence against the defendant Eddleman, but is to be disregarded by you and not by you considered as evidence against the Babicora Development Company. You are satisfied with that instruction, gentlemen?

"Mr. Farmer: Yes, I am."

Later, on cross-examination of defendant Eddleman by his own counsel, he identified himself as the one who had come up on a horse at the time the statement was said to have been made, identified part of the conversation, but said he did not think he stated that it was his own fault. He was then asked to state the whole conversation. The court was not asked then, or at any time after it was shown he had made the statement, to strike it from the record or to instruct the jury to disregard it, unless the instruction above quoted was intended and considered as covering the whole subject. Under these circumstances, we are of the opinion that the error, if any, is not sufficiently obvious to require a reversal.

■ Appellants next insist that even if they were guilty of negligence, this negligence did not contribute to plaintiff's injuries, but that the proximate cause of such injuries was the negligence of Payne, the driver of the car. It is claimed that courts, both trial and appellate, are prone to error in confusing the question of proximate cause with the simple preliminary question as to whether a defendant is guilty of any negligence at all. Under the able piloting of counsel we have steered through these hidden rocks of analysis which are said to have wrecked so many judicial decisions, and have first passed upon the question as to whether appellants could be held guilty of negligence under the evidence. It remains to consider whether the jury was justified in finding that there was causal connection between that negligence and the injury complained of; in other words, whether such injury was directly contributed to by such negligence. Some reliance is placed upon the fact that the automobile in question did not actually come in contact with the cattle being driven by the defendants.

In *Catlin* v. *Union Oil Co. et al.*, 31 Cal. App. 597 [161 Pac. 29, 33], the court said:

"If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. If it could not have been thus anticipated, then the intervening negligent person alone is responsible."

Even if the driver of the automobile was also negligent, that fact does not necessarily relieve appellants from liability. Their negligence may have also contributed to the resulting injuries. Their negligence may have caused Payne to be confronted with a situation of imminent danger and peril requiring instant action, and if that be true, the fact that his actions under such sudden peril were not the wisest possible, in the light of mature deliberation, cannot be said to constitute an independent intervening cause breaking causal connection between their negligence and plaintiff's injuries. It may be that appellants ought to have reasonably foreseen that Payne, under the stress of such circumstances as were presented through their acts, would do what he did do. It may well be that Payne did what an ordinarily prudent man would have done if confronted by such an emergency. It is not for the court to decide these questions as a matter of law. As was said in *Williams* v. *San Francisco etc. Ry. Co.*, 6 Cal. App. 715 [93 Pac. 122, 126]:

"The rule is that the defendant is answerable in law for negligence proximate in causal relation to the damage or, in other words, it is liable if the obstruction for the existence of which it was responsible was the direct cause of the accident with its resulting damages. The difficulty, indeed insuperable, with which the courts and text writers have been, and always will be, confronted with regard to the right of action founded in negligence, is to formulate an invariable, iron-clad rule, applicable alike to all cases of personal injury, upon the question of the proximate cause of the damage, or 'the connection between the negligent act or omission and the damage.' It should, therefore, be a case in which there is very clearly wanting, under the evidence, the essential connection between the negligent act or omis-

sion and the damage to warrant the court in taking it from the jury, either through a motion for a nonsuit, or a direction to find for the defendant or the instructions.''

And from 19 California Jurisprudence, page 732:

''The proximity of one fact to another in a case, and their relation and sequence to each other, is essentially within the province of the jury to determine. Whenever the injury complained of is the result of a series of acts that are interlinked or dependent upon each other, the certainty that the final act is the result of a prior one diminishes in proportion to the remoteness of the first act from the result, and the jury must determine whether the several acts constitute such a successive series, or are linked together so as to form one continuous whole, or whether they are so independent that the result cannot be said to be the natural consequence of the first.''

We think under the facts shown here, the question of proximate cause was one for the jury and, if that be true, their decision cannot be disturbed on appeal. (*Newman* v. *E. E. Overholtzer Sons' Co.*, 182 Cal. 778 [190 Pac. 175]; *Anderson* v. *Seropian*, 147 Cal. 201 [81 Pac. 521]; *Dougherty* v. *Ellingson*, 97 Cal. App. 87 [275 Pac. 456].)

The main contention of appellants on the question of proximate cause rests upon the proposition that the injuries of the plaintiff were caused entirely by the reckless driving of Payne and not by any act or omission upon their part. It cannot be questioned that if the driver's negligence was the proximate cause of the injury, the respondent could not recover against a third party, irrespective of whether such driver's negligence is imputed to the guest. However, we do not think it can be held as a matter of law that the negligence of this driver, if any, was the proximate cause of the injury. It cannot be held to be negligence as a matter of law to drive an automobile thirty-five or forty miles an hour over a state highway, even at night. In the case of *Moeller* v. *Packard*, 86 Cal. App. 459 [261 Pac. 315, 321], the court said:

''Nor can this court, without arbitrarily exercising the power of review to which it is limited in instances such as this, hold, as a matter of law, unless the speed limit is specifically fixed by statute, or unless, in the absence of a provision of law specifically limiting the rate of speed at

which an automobile may be driven over the public highways, the evidence in a particular case unquestionably shows that the operator of the car has driven it at an outrageously high rate of speed over a highway where the intrinsic or other conditions of the thoroughfare render such speed abnormally dangerous to other persons traveling over such highway, that a particular rate of speed is unlawful *per se* or constitutes negligence on the part of the driver.''

In the case of *Uhl* v. *Fertig,* 56 Cal. App. 718 [206 Pac. 467, 469], the court said:

''If facts are doubtful, as the result of uncertain evidence or conflict of testimony, the question should be submitted to the jury. (*Davis* v. *California St. R. R. Co.,* 105 Cal. 131 [38 Pac. 647].) So, also, whenever upon the evidence 'the conclusion (of fact) is open to debate it is for the jury.' *Stephenson* v. *Southern Pacific Co.,* 102 Cal. 143 [34 Pac. 618, 36 Pac. 407].)''

And again in this same case the court said:

''As a matter of law his act in swerving toward the left, when it appeared to him that a collision was imminent, instead of continuing on the right-hand side of the road was not in itself negligence. Defendant's testimony is entitled to be taken as representing the conditions which caused him to guide his machine to the left, for its stands uncontradicted. . . . ''

''The rule, judicially stated, is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.'' (See, also, *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125]; *Kerner* v. *Spiegl,* 34 Cal. App. 162 [166 Pac. 1013].)

There was no evidence that the driver of the automobile saw this obstruction on the highway in time to avoid it. We then face the question whether there is any evidence that he should have seen it in time to protect himself and his passengers. In deciding whether the driver of the automobile, in the exercise of due care and with proper headlights, should have seen these cattle on the road, there is involved the conditions then existing, the contour of the road, the degree of darkness, and how the cattle blended in with the landscape. The testimony shows the driver of the

car had been over this road 150 times and had never theretofore met cattle thereon. The evidence is uncontradicted that when the reflection of the lights in the eyes of the cattle was first seen, it looked like parking lights on automobiles, with the appearance that these were a considerable distance away. Payne testified they appeared to be a mile away. So far as appears this was the first time the occupants of the car had ever had such an experience. The very appearance of what seemed to be merely lights in the distance, in the brief period of a second or two, may have so attracted the attention of the driver that he did not see that there were animals there as quickly as he would otherwise have observed this. The difficulty of seeing any object on the highway, no matter how perfect a headlight one is using, is recognized by our law, in requiring tail-lights not only on vehicles left standing on the highway, but on vehicles that are moving thereon. In limiting headlights so that their glare shall not destroy the vision of approaching drivers, it has been found necessary to require tail-lights on other vehicles because it has been found by experience that headlights do not always show up obstructions in time to avoid accidents. While there is no law requiring lights on cattle, the practical situation that existed here is apparent. Appellants argue that Payne must have seen the cattle if his lights complied with the law, and that we must hold his failure to see the cattle in time and to stop, to be negligence, as a matter of law. According to the defendants' evidence the cattle were to one side and coming toward the driver of the automobile. In *Schurman* v. *Los Angeles Creamery Co.*, 81 Cal. App. 758 [254 Pac. 681, 682], the court said:

"Appellant asks the court to determine, as a matter of law, that a person traveling the highway at night must see every object on his half of the highway in face of the fact that automobile engineers and manufacturers are expending vast sums of money in extensive research to develop lights that will measure up to appellant's requirements; and have so far been but partly successful. In order that this court could determine, as a matter of law, that respondent was guilty of contributory negligence much more is required than would be sufficient in the trial court to sustain a finding of fact to the same effect. It must be clearly shown from the undisputed facts, judged in the light of common

knowledge and experience, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure. (*Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 320.) The evidence against the plaintiff should be so clear as to leave no room for doubt, and the facts such that the inference is irresistible, to justify this court in determining, as a matter of law, plaintiff guilty of contributory negligence against the finding. (*Schneider* v. *Market St. R. R.*, 134 Cal. 487 [66 Pac. 734].)''

Just where these cattle were and whether the driver of the car should have seen them are questions of fact. Payne may have been negligent under the circumstances, or he may not have been. That he was, may not be said as a matter of law. That question, and the further question of which negligence, if any, was the proximate cause of plaintiff's injuries was properly left to the jury.

Appellants next contend that respondent was guilty of contributory negligence, as a matter of law. What we have just said in regard to the negligence of Payne, applies also on this question. If it cannot be said, as a matter of law, that Payne was negligent, it cannot be said, as a matter of law, that Olden was negligent in not protesting against what Payne was lawfully doing. Even if Payne were negligent, it would not necessarily follow that Olden was negligent unless he, as a guest, knew or should have known that fact, and unless, under the circumstances, it was his duty to protest or take other measures for his own protection. Appellants rely upon the cases of *Ham* v. *County of Los Angeles*, 46 Cal. App. 148 [189 Pac. 462], *Barnett* v. *Atchison, T. & S. F. R. R. Co.*, 99 Cal. App. 310 [278 Pac. 443], *Lynn* v. *Goodwin*, 170 Cal. 112 [L. R. A. 1915E, 588, 148 Pac. 927], and *Parmenter* v. *McDougall*, 172 Cal. 306 [156 Pac. 460, 461]. We find nothing in the case of *Ham* v. *County of Los Angeles* holding that a guest would have been guilty of contributory negligence, as a matter of law even under the circumstances of that case. In *Barnett* v. *Atchison, T. & S. F. R. R. Co.*, there was involved a railroad crossing which, in law, placed a special duty of care upon anyone crossing over the same; there was full and complete knowledge of the dangerous situation; and there was such utter lack of attention as led to complete disregard of adequate warning signals. In *Lynn* v. *Goodwin*,

the driver of the machine was drunk, and the evidence was such that the court held that the guest must have known this fact and that this established independent negligence on the part of the guest. *Parmenter* v. *McDougall* merely held that the question of contributory negligence in that case should have been submitted to the jury. In that case the court said:

"All of these decisions, while recognizing that the negligence of the person operating the vehicle is not imputed to the passenger, hold that the passenger is bound to exercise ordinary ·care for his own safety, and that whether or not he exercised such care is a question of fact. Unless the evidence is all one way this question must be submitted to the jury."

For the general rule see California Jurisprudence, 1928 Supplement, Automobiles, page 315, section 141:

"A recovery is not precluded by the simple fact that the car was being driven at a speed which was in excess of that specified by section 113 of the California Vehicle Act, and which was such as to endanger life, limb, and property. Nor is a recovery barred by reason of the fact that the plaintiff did not caution or remonstrate with the driver. Error is committed in instructing the jury in effect that the guest was guilty of contributory negligence if the defendant was driving at an excessive or dangerous speed, and the guest, having knowledge or notice of this fact, failed to remonstrate."

"The duty of a passenger to remonstrate against excessive speed or to withdraw from the vehicle, a reasonable opportunity therefor being afforded, is not absolute, the question whether by failure to do either he is wanting in ordinary care being ·dependent upon the circumstances of the particular case."

Applying the established rules of law to the facts in this case, we cannot escape the conclusion that the question as to whether or not the respondent was guilty of contributory negligence, was a question of fact for the jury. (*Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462 [247 Pac. 236]; *Bryant* v. *Pacific Elec. Ry. Co.*, 174 Cal. 737 [164 Pac. 385]; *Lininger* v. *San Francisco, Vallejo & Napa Valley R. R. Co.*, 18 Cal. App. 411 [123 Pac. 235]; *Sichterman* v.

*R. M. Hollingshead Co.*, 94 Cal. App. 286. [271 Pac. 372, 1111].)

■ Appellants complain of the refusal of the court to give certain instructions, which will now be considered. The first is the following:

"I further instruct you that if such animals appear frightened the person in control of such vehicle is required by law to reduce its speed, and if requested by signal or otherwise by the driver, rider, or persons in charge thereof, shall not proceed further toward such animal or animals unless such movement be necessary to avoid accident or injury, until such animal or animals be under control. (California Vehicle Act, sec. 140.)"

We think this section of the California Vehicle Act applies where the driver of an automobile can see that the animals are frightened, under circumstances where he could comply with the provisions of the act. The evidence is uncontradicted here, that the driver of the automobile, as soon as he saw the animals, reduced his speed as much as he could; that no signal was given, and that he made every possible endeavor to cease to proceed further toward such animals. ■ There was no issue on this point and the instruction as asked for, without qualifications or additions, was properly refused. (*Boone* v. *Oakland Transit Co.*, 139 Cal. 490 [73 Pac. 243]; *Idemoto* v. *Scheidecker*, 193 Cal. 653 [226 Pac. 922].) We also think that if there was any error in this respect, it was cured by the general instructions as to negligence as applying to the driver of the car, which were given by the court.

■ It is next contended that the court erred in refusing to give two instructions, based upon section 113a and b-3 of the California Vehicle Act.

"Subject to the provisions that any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and that no person shall drive any vehicle upon a public highway at such speed as to endanger the life, limb or property of any person, I instruct you that it is lawful for a driver of such vehicle to drive the same at a speed not exceeding fifteen miles an hour in traversing a highway when the driver's view is

obstructed within a distance of two hundred feet along such highway in the direction in which he is proceeding.'' (California Vehicle Act 113a and b–3.)

''Subject to the provisions that any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and that no person shall drive any vehicle upon a public highway at such speed as to endanger the life, limb or property of any such person, I instruct you that it is lawful for a driver of such vehicle to drive the same at a speed not exceeding fifteen miles an hour in traversing a highway when the driver's view is obstructed within a distance of two hundred feet along such highway in the direction in which he is proceeding, and if you find in this case that Laverne Payne's view, at the time of the accident complained of, was obstructed so that he could not see a greater distance than two hundred feet along said highway in the direction in which he was then proceeding, and that he was then driving at a speed in excess of fifteen miles per hour, and that such act on his part was alone the proximate cause of the accident complained of, then I instruct you that plaintiff cannot recover against defendants, or either of them, in this cause, and your verdict must be in defendants' favor.'' (California Vehicle Act, sec. 113a and 113 b–3.)

These instructions were apparently requested on the theory that the vision of the driver Payne was obstructed. Subdivision 3 of subdivision b of section 113 of this act reads as follows:

''Fifteen miles an hour in traversing or going around curves or corners of a highway when the driver's view is obstructed within a distance of two hundred feet along such highway in the direction in which he is proceeding.''

Appellants state in their brief, ''there was no evidence that the automobile was going around a curve or corner, so the only portion of the law applicable to this case was that which relates to traversing a highway in which the view was obstructed for more than two hundred feet.'' We think that subdivision b–3 of this section of the California Vehicle Act cannot be thus divided. That subdivision applies to an automobile going around curves or corners and

not to a straight highway. The evidence is uncontradicted that the highway at the point of this accident was straight for some miles. The court did instruct the jury, in other instructions, that any person driving a vehicle on the public highways of this state, is required by law to drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and that no person shall drive any vehicle upon a public highway at such speed as to endanger the life, limb or the property of any person. And that if Payne failed to comply with such law, and his negligence was alone the proximate cause of the accident, then the plaintiff could not recover. The court also instructed the jury that every person having control or charge of any vehicle upon a public highway in California, and approaching any horse upon which any person is riding, or any livestock which is being driven upon a highway, is required by law to operate, manage and control such vehicle in such a manner as to exercise every reasonable precaution to prevent frightening, and to safeguard any such animals and to insure the safety and protection of any person riding or driving the same. And that if Payne was negligent in failing to so do, and such negligence was alone the proximate cause of the accident, plaintiff could not recover against either defendant. The instructions requested, not being correct statements of the law, were properly refused.

 Error is next claimed in refusing to give the following instruction: "The court instructs the jury that if by a preponderance of the evidence it is shown in this case that the automobile in which the plaintiff was riding at the time of the accident complained of was under the management and control of Laverne Payne, and that the accident complained of was not such an accident as would in the ordinary course of events happen if the said automobile had been driven with due care, then that under such circumstances a presumption arises, by reason of law, that said accident resulted from the negligent operation or control of said automobile by said Laverne Payne," with three other instructions based upon the same proposition.

Appellants argue that these instructions were proper in accordance with the case of *Davis* v. *Brown,* 92 Cal. App.

20 [267 Pac. 754]. The instruction is no more supported by that authority than it is applicable to the facts of this case, and was properly refused. In addition to other objections this instruction took away from the jury the question of whether any negligence of the appellants contributed to the accident, irrespective of any negligence on the part of the driver of the machine.

The next instruction, the refusal of which is complained of, is as follows: ''You are further instructed that the headlights of motor vehicles in this state must be so constructed, arranged and adjusted that they will, at all times between one-half hour after sunset and one-half hour before sunrise, and under normal atmospheric conditions, produce ample driving light for the use of the operator of such vehicle, but will not project a glaring or dazzling light to persons approaching such lights or to persons whom such headlights may approach. (Sec. 101, California Vehicle Act.)''

We think this section of the California Vehicle Act must be read in connection with section 99 and other sections of this act, and that the ample light referred to is thus limited. As the instruction was worded it could be taken as calling for ample light for any possible purpose and under any possible conditions, except that the atmospheric conditions must be normal, and under the circumstances of this case it was not error to refuse to give the instruction in that form. Appellants also complain of the following instruction which was given by the court: ''Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily rule the conduct of human affairs, would do, or in doing something that prudent or reasonable men would not do. It is not intrinsic or absolute, but always relates to some circumstance of time, place and persons. You are instructed that one who, in violation of the law, does any act which proximately causes an accident, and without which an accident would not have happened, is by virtue of his disregard of the law in that regard, guilty of negligence, and in the absence of some affirmative defense like that of contributory negligence, is liable for all the damages which proximately results from his unlawful act.''

Their objection is based upon the claim that there was no evidence that either of the defendants did any act "in violation of law." This theory on the part of appellants has already been covered by us, and if we are correct in our view that there was sufficient evidence in that regard to go to the jury, the instruction was proper.

■ The next point raised by appellants is that the verdict was so excessive as to indicate passion and prejudice on the part of the jury. The verdict was for $47,500. Since the plaintiff was earning $175 a month at the time he was injured, it is argued that a verdict of $25,526.30 would have adequately compensated the income lost, if invested at six per cent, and that the balance of the judgment gave him in excess of $20,000 for pain and suffering and expenses, and that this is so excessive as to indicate passion and prejudice. In *Johnson* v. *Pearson*, 100 Cal. App. 503 [280 Pac. 394, 395], the court said:

"The rule is well established that the amount of damages in this kind of an action is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just.

"Upon appeal, the decision of the trial court and the jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury.' (*Reneau* v. *Hirsch*, 88 Cal. App. 1 [262 Pac. 1100, 1102], and cases cited.)"

There was evidence that plaintiff had expended $1,093 for physicians and hospital bills. Without reviewing all of the evidence, it is sufficient to say that his injuries appear to be permanent, as practically conceded by appellants; that he had suffered a broken neck; that for a time after the accident he was partially paralyzed and could not move either his legs or his arms; that up to the time of the trial he had not been able to do any continuous work of any kind; that he suffered severe pain for some months; that he had other periods of numbness when he was unable to feel anything; that up to the time of the trial he had to wear a leather collar around his neck to keep his head from moving, or else the pressure on his nerves would make him

numb all over; that he had to wear this collar all of the time he was awake; that at the time of the trial he had no strength in his left arm and no strength in his left side; that there was a lack of control of his left leg; that he still was suffering constant pain; that his condition was not improving; and that he was now earning $15 a month. Prior to the accident he was a strong, healthy man, forty-three years old, and was fond of outdoor life. The doctors testified that his injuries were permanent, and that the only hope of doing away with the leather collar was that the vertebrae in his neck could be grown together, either in time or by aid of an operation, so that his head could be thus supported and not allowed to tip to one side, thus bringing pressure on the nerve. And that if this result was obtained, his neck would still be stiff. There can be no doubt that the plaintiff's injuries were most serious and we cannot say that the verdict is grossly disproportionate to any compensation warranted by the facts. (*Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156 [47 Pac. 1019] ; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513].)

■■■ Upon the oral argument of this case for the first time, appellant raised a question as to misconduct on the part of one of opposing counsel. The claim of misconduct is based upon an excerpt from this counsel's argument to the jury, which is thus set forth: " . . . being in the employ of William Randolph Hearst and his company be his fault in any way. . . . " A statement signed by defendant Eddleman, which included an assertion that he was working for William Randolph Hearst, had previously been admitted into evidence as against said Eddleman. Assuming this reference to have been improper, even in connection with defendant Eddleman, our attention is not called to any possible prejudice or harm therefrom. The situation is just the reverse of the usual claim that the jury is allowed to discover that a corporation is interested. William Randolph Hearst may be a well-known citizen in that community. Or the fact may be to the contrary. We cannot assume or take judicial notice of any facts in this regard that may exist outside of the record. Neither can we assume that a connection with him is to be considered a detriment rather than a benefit. In any event, the jury was promptly instructed to disregard the reference, and the offense, if any, was not

repeated. In the absence of a better showing than the one before us we must hold that any possible error was cured.

From a practical standpoint, it is apparent that the situation with which the driver of this machine was confronted on the highway at night was one that was most dangerous in its possibilities. While from a legal standpoint there are a number of close questions affecting the responsibility for the accident, we feel that in each instance the question, though close, is one of fact rather than of law, and as such was properly left to the jury.

For the reasons given the judgment is affirmed.

Marks, Acting P. J., and Beaumont, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 18, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 23, 1930.

Preston, J., dissented.