[S.F. No. 23115. In Bank. Dec. 17, 1974.]

KENNETH A. MORSE, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN JOSE-MILPITAS
JUDICIAL DISTRICT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Sheldon Portman, Public Defender, Philip H. Pennypacker and Frank D. Berry, Jr., Deputy Public Defenders, for Petitioner.

Rose Elizabeth Bird as Amicus Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins, Thomas W. Condit and Rodney J. Blonien, Deputy Attorneys General, for Respondent and for Real Party in Interest.

**OPINION**

**WRIGHT, C. J.**—Petitioner Kenneth A. Morse, charged with possession of marijuana, seeks a writ of mandate commanding respondent municipal court to divert him from criminal prosecution to a special rehabilitative

treatment center afforded to first-time drug offenders. (Pen. Code, §§ 1000-1000.3.)[1] Petitioner's principal contention is that it was improper for the trial judge to deny diversion on the ground that the time for petitioner to consent to participation in the program had passed once he filed a pretrial motion to suppress evidence. (§ 1538.5.) For reasons hereinafter stated, we conclude that criminal proceedings have not progressed beyond the point where petitioner would no longer be eligible to be considered for diversion and, accordingly, we order that a writ of mandamus issue compelling the respondent court to commence appropriate proceedings.

In 1972 the Legislature enacted sections 1000-1000.3 which establish an innovative procedure whereby under particular conditions a person charged with any one of six specified drug offenses may participate in a drug education and treatment program in lieu of undergoing a criminal prosecution. Such special procedure is initiated by the district attorney who advises the defendant or his attorney of the defendant's eligibility if the district attorney has concluded that the defendant has no prior narcotics or dangerous drug conviction; that he has no record of parole or probation violations; that there is no evidence of his commission of a narcotics or restricted dangerous drug offense other than those specified in the statute; and that the offense charged does not involve actual or threatened violence. If the defendant thereafter consents to participate and waives his right to a speedy trial, the district attorney must refer the case to the probation department for an investigation which takes into consideration particular circumstances (e.g., family and educational background) deemed relevant to a determination of whether the defendant would benefit by the corrective influences of the diversion program. (§ 1000.1.) As part of its investigation the probation department is required to make inquiry to ascertain those community programs, if any, from which the defendant might benefit and which would accept him. (*Id.*)

After receiving the probation department's report of its investigations the trial court before which the defendant's case is pending must hold a hearing at which it reviews the report and "any other information considered by the court to be relevant to its decision" and determines whether the defendant consents to further diversion proceedings, waives his right to a speedy trial and whether diversion is merited. (§ 1000.2.) If the court is of the view that diversion is proper it may stay further criminal proceedings for a period of between six months and two years. (*Id.*)[2] During the stay of

---

[1]Unless otherwise specified all statutory references are to sections of the Penal Code.

[2]Contrary to the express provisions of the statute the court may exercise its discretion without the concurrence of the district attorney. (*People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59 [113 Cal.Rptr. 21, 520 P.2d 405].)

criminal proceedings the court may rescind diversion for cause such as the defendant's failure to continue to participate in the drug treatment program. If, on the other hand, the defendant successfully completes the treatment program the criminal charges are ultimately dismissed. (*Id.*)

Following the effective date of the foregoing provisions petitioner was arrested and charged with possession of marijuana. (Health & Saf. Code, § 11357.) At his subsequent arraignment before the respondent court the district attorney advised petitioner that he was eligible for diversion. Although thus entitled to consent to diversion and thereby to initiate a probation department investigation, petitioner instead pleaded not guilty. He then moved to suppress particular evidence against him under section 1538.5. The motion was denied after a full evidentiary hearing. Thereafter petitioner advised the court that he would then consent to diversion. The district attorney objected on the ground, inter alia, that petitioner had not made a proper and timely consent to be considered for diversion as required by section 1000.1. The court denied diversion, ruling that petitioner had elected to be prosecuted in the criminal courts when he proceeded to move for pretrial suppression. The court thus adopted the view that "the diversion program is designed to avoid utilization of the criminal justice system and the defendant actually utilizes that when he" moves to suppress evidence.

Petitioner thereupon sought mandate in the superior court. That court denied the writ for the reason that "the petitioner did not 'consent' pursuant to section 1000.1 of the Penal Code." Petitioner thereupon sought instant relief.

Petitioner contends that the interpretation given the diversion statute by the courts below and urged by the People is at odds with both the statute's language and purpose. He specifically argues that no particular time in the course of criminal proceedings is prescribed for the defendant's initial consent to consideration for diversion. In the absence of a specified time, he further asserts the rehabilitative purpose of the diversion program, the proper consideration for defendant's desire to make an intelligent decision whether to seek diversion, and due deference to the need for early resolution of search and seizure issues all require a construction of the statute which places the district attorney under a continuing duty to refer the case to the probation department upon a defendant's consent once it has been initially determined that he may be eligible for diversion. Incident to these contentions petitioner protests that the interpretation urged by the People renders the statute unconstitutional by penalizing him for asserting his right to be free from unreasonable searches and

seizures under the Fourth Amendment and would permit a trial court to condition the availability of diversion on the abandonment of such constitutional right.

Petitioner is joined by the California Public Defenders Association which, as amicus curiae, urges that petitioner's challenge to the validity of his arrest and search is not a proper reason for denying diversion under the statute. The association envisions in the construction urged by the People the creation of a vast loophole in the exclusionary rule.

The People respond by emphasizing that its construction of the statute does not coerce defendant to waive or abandon his Fourth Amendment rights, but merely requires that he postpone his challenge to the legality of searches and seizures until it is clear that a criminal prosecution will go forward. This deferral of a motion to suppress, the People urge, will conserve the judicial time devoted to deciding the admissibilty of evidence. Such an interpretation, it is contended, is consistent with the avowed purpose of the diversion statute to reduce the burden placed on court calendars by first-offense drug prosecutions.

The question before us is the narrow one of how far into the criminal process a defendant may go before he can no longer be afforded the right to *consent to consideration for diversion* under section 1000.1 and thereby secure the referral of his case to the probation department for investigation.[3] ■ In approaching that question we need not long detain ourselves with the introductory question of whether mandate is a proper remedy. An order denying diversion is a preliminary determination from which no provision is made for interlocutory review but which is subject to review on appeal from a judgment in the criminal proceedings. (*Sledge* v. *Superior Court* (1974) 11 Cal.3d 70, 75-76 [113 Cal.Rptr. 28, 520 P.2d 412].) However, the issue may nevertheless be raised, as in the instant case, by extraordinary writ when there is a need for a prompt and definitive resolution of a constitutional challenge to a new statutory program of widespread concern. (*Id.*, fn. 5; see also *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 850-851 [92 Cal.Rptr. 179, 479 P.2d 379].) The absence of another adequate remedy was finally determined by the granting of the alternative writ. (*Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 361 [115 Cal.Rptr. 783, 525 P.2d 687].)

Turning next to the problem of when a defendant's consent to consideration for diversion must be entertained, we are bound by certain

---

[3]To be distinguished is section 1000.2 (post-investigation statement of *consent to diversion*) which also is made before a trial judge and which section is not presently before us.

well-established principles of statutory interpretation. ■ Penal Code sections must generally be construed " 'according to the fair import of their terms, with a view to effect its objects and to promote justice.' " (*In re Smith* (1966) 64 Cal.2d 437, 440 [50 Cal.Rptr. 460, 412 P.2d 804].) Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. (E.g., *People* v. *Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675], emphasizing that the plain meaning of words used is not to be disregarded.)

■ When the language of the section is on its face ambiguous or leaves doubt, however, the court must resort to extrinsic aids to ascertain the purpose behind the statute and give the provision a judicially created meaning commensurate with that purpose. (E.g., *People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400], holding that penal statutes must be interpreted in light of the objective sought to be achieved as well as the evil sought to be averted; cf. *In re Estrada* (1965) 63 Cal. 2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)

Applying these principles to the statutory provisions at issue, we find that the language of the code itself carries us a considerable distance. ■ Section 1000.1 expressly states that "[i]f the defendant *consents and waives his right to a speedy trial* the district attorney shall refer the case to the probation department" (italics added). These words unequivocally make a defendant's consent to consideration for diversion contingent upon a simultaneous waiver of speedy trial rights. In using such language the Legislature was surely aware of precedent decisions (e.g., *People* v. *Wilson* (1963) 60 Cal.2d 139, 146-147 [32 Cal.Rptr. 44, 383 P.2d 452] as construed in *In re Yurko* (1974) 10 Cal.3d 857, 866-867 [112 Cal.Rptr. 513, 519 P.2d 561]; *Cody* v. *Justice Court* (1965) 238 Cal. App.2d 275, 286-287 [47 Cal.Rptr. 716]; *People* v. *Garcia* (1963) 222 Cal.App.2d 755, 758-759 [35 Cal.Rptr. 443]) which recognize that the right to speedy trial is one which must be asserted prior to the actual commencement of trial, usually by means of a motion to dismiss made at the time the trial date is set or at the time the case is called for trial. Accordingly, the plain meaning of the waiver of speedy trial language of section 1000.1 is that the defendant's consent to referral of his case to the probation department should be tendered to the district attorney prior to the commencement of trial. (See, e.g., *People* v. *Nash* (1959) 52 Cal.2d 36, 43 [338 P.2d 416], reading a Penal Code reference to "in-

sanity" as meaning what the term had been interpreted to mean in prior case law; *Kadota* v. *City & County of S.F.* (1958) 166 Cal.App.2d 194, 195 [333 P.2d 75], reading Code Civ. Proc., § 583 "brought to trial" language to embody the definition of trial set down in early cases.)[4]

Although the clear wording of the diversion provisions thus precludes a defendant from initiating diversion proceedings by tendering a consent after commencement of trial, there is nothing in the statutory language itself to indicate any specific point during the pretrial period beyond which an effective consent can no longer be tendered. Other than specifying that referral to the probation department may be contemplated only after "a case is before any court upon an accusatory pleading" (§ 1000), the diversion provisions are silent about the point of consent. They establish no hierarchy of pretrial procedures which commands that the diversion request be made before other more traditional pretrial motions. In order to resolve the question whether defendant's consent, which is realistically a request for diversion, must come ahead of a motion to suppress evidence, therefore, we must look to the legislative policy underlying diversion.

■  As this court recently recognized in *People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d at pages 61-62, the diversion statute has the twofold purpose of (1) sparing appropriately selected first-offenders the stigma of a criminal record by prompt exposure to community educational and counseling programs and (2) relieving the congested criminal courts of some relatively minor drug abuse prosecutions. (Remarks of State Senator George Deukmejian to the Senate Health & Welfare Committee, June 14, 1972.) In light of these purposes, we believe the interpretation for which petitioner argues to be the more reasonable of the competing constructions offered by the parties. An argument can be made that perhaps the second of the two purposes is furthered to some extent by the construction placed upon the diversion provisions by the People. Clearly, if all motions to suppress must be deferred until after the initial question of diversion has been passed upon, no court time will be expended on decisions as to the admissibility of evidence until it is certain that the defendant will actually undergo prosecution. On the other hand, if the People are relying solely on material evidence which, if an appropriate motion is made, must be suppressed there will be no expenditure of the

---

[4]Any ambiguity that might exist, it seems to us, would be cured by the fact that the diversion provisions constitute part of title 6 of part 2 of the Penal Code which is devoted exclusively to "Pleadings and Proceedings Before Trial." (See *Barnes* v. *Jones* (1876) 51 Cal. 303, 306; cf. *Bettencourt* v. *Sheehy* (1910) 157 Cal. 698, 701-702 [109 P. 89].)

court's and the department's time on diversion proceedings if the question of suppression is resolved first. Insofar as the deferral of a motion pursuant to section 1538.5 attaches a new condition to diversion, the People's interpretation appears for reasons stated below to be antithetical to the rehabilitative purpose of diversion.

We perceive the latter purpose to be an exceedingly broad one. The entire tenor of the diversion statute is one of liberal experiment. Reference to its legislative history reveals that it is only one part of a comprehensive drug treatment program adopted by the Legislature. That program involved, inter alia, the establishment of new methadone programs, appointment of a statewide advisory board for drug treatment facilities, and new funding for drug treatment. (Stats. 1972, ch. 1255, p. 2464; Remarks of Senator George Deukmejian, *supra.*) In addition, the fact that the Legislature made the statute self-terminating in 1975 (§ 1000.4) suggests that the effectiveness of the drug treatment program will be subjected to periodic reassessment.[5] We therefore deem it reasonable that the Legislature's overriding purpose was to facilitate its broader aim of conducting an unusually liberal experiment in rehabilitation by encouraging the broadest possible participation in the drug treatment programs.

It necessarily follows that the meaning ascribed to the diversion statute by the People is too restrictive. As a practical matter, the People's insistence upon a deferral of suppression motions requires that a defendant choose between potential diversion and the possibility of an immediate dismissal of charges. His opportunity to test the strength of the evidence against him *at the outset* of the case is entirely lost if he elects diversion. Although no loss of constitutional rights thereby occurs in view of the defendant's ability to move to suppress at any later resumption of criminal proceedings by reason of a failure to complete successfully a drug treatment program, such a choice may tend to discourage defendants from consenting to consideration for diversion. As in the case of petitioner, defendants may be wont to try for even a remote chance of dismissal by virtue of the exclusionary rule in lieu of immediately committing themselves to the restrictions imposed by requiring participation in a rehabilitation program. The attachment of a condition that the motion to suppress be deferred until after commitment to diversion, therefore, does not appear to be countenanced if the broad experimental design of the Legislature is to have its proper effect.

---

[5]The Legislature has passed and the Governor signed on September 24, 1974, Assembly Bill 3096 which extends the termination date to January 1, 1977. (Stats. 1974, ch. 1014.)

We can readily perceive that the interpretation contended for by petitioner will tend to further the purposes of the diversion statute. As we have previously indicated, an early motion to suppress which results in an immediate dismissal will conserve the judicial time which otherwise would be expended on diversion proceedings. Moreover, the trial court's consideration of the evidence in the case incident to passing on the motion to suppress will, if the motion is denied, undoubtedly aid the court in assuring that the particular defendant involved meets the section 1000 eligibility requirements that the crime charged not involve actual or threatened violence (subd. (a)(2)) and that the case involve "no evidence" of defendant's commission of other more serious drug offenses (subd. (a)(3)).

Our conclusion that the underlying purposes of the diversion procedure demand rejection of the interpretation urged by the People is reinforced by an application of several pertinent canons of construction. ■ We have, for example, adhered to the maxim that mention of one thing implies exclusion of another. (E.g., *Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 387 [60 P.2d 847].) The statute, as previously noted, requires waiver of the constitutional and statutory right to a speedy trial as a condition of eligibility but does not refer to waiver of any other constitutional right or procedural step. Hence, the exclusion of the deferral of a motion to suppress as a condition of diversion is negatively implied.

■ Another applicable canon requires us to construe a Penal Code provision as favorably to the defendant as its language and the circumstances of its application may reasonably permit. (E.g., *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) An interpretation of the diversion provisions which holds the opportunity for diversion free from restrictive conditions not actually written into the staute by the Legislature is surely more consistent with that rule of construction than the interpretation urged by the People.

■ Finally, our general duty to construe Penal Code sections in harmony with one another (e.g., *People* v. *Tideman* (1962) 57 Cal.2d 574, 583 [21 Cal.Rptr. 207, 370 P.2d 1007]; see *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241]) militates for the adoption of an interpretation permitting the earlier filing of other pretrial motions. Any contrary reading of the diversion provisions would directly conflict with the recognized purpose of section 1538.5 to facilitate the resolution of search and seizure issues at the earliest possible

stage of the proceedings. (See *People* v. *Superior Court (Edmonds)* (1971) 4 Cal.3d 605, 610 [94 Cal.Rptr. 250, 483 P.2d 1202].)[6]

■ We conclude that section 1000.1 requires the district attorney to refer a case to the probation department if a defendant, who has previously been determined eligible under section 1000, consents to diversion and waives his right to a speedy trial *at any time prior to the commencement of trial.* Defendants eligible for diversion may tender usual pretrial motions prior to their expression of consent to consideration for diversion.[7]

Petitioner is therefore entitled to consent to diversion and thereby compel the referral of his case to the probation department.

Let the preemptory writ of mandate issue as prayed.

Tobriner, J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

**CLARK, J.**—I dissent. The Legislature's purposes in enacting the diversion program are not served by permitting a defendant to exhaust such pretrial remedies as a suppression motion before consenting to diversion.

One of two fundamental purposes of the diversion program is to "identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to

[6]The delay in hearing the motion to suppress attendant upon a defendant's unsuccessful attempt at rehabilitative treatment would clearly create evidentiary problems such as a possible necessity to preserve by depositions certain testimony regarding a search or arrest. At the same time, a deferral of the motion in cases where the defendant actually completes diversion and thereby secures a dismissal of charges might ultimately undermine the deterrent force of the exclusionary rule. In such cases, an early diversion decision would preclude a later motion to suppress evidence unconstitutionally obtained because criminal proceedings would never be resumed. Diversion could evolve into a procedural device for the prevention of release of defendants who are charged solely upon illegally seized evidence.

A similar result can be envisioned with respect to motions to set aside the information pursuant to section 995. Under the interpretation urged by the People it would be impossible to question the legal sufficiency of a charge prior to diversion. As a consequence, defendants charged on unfounded informations might nonetheless experience some of the restrictions placed upon the liberty of those in a diversion program. Surely the Legislature's recognized (e.g., *People* v. *Sigal* (1967) 249 Cal. App.2d 299 [57 Cal.Rptr. 541]) purpose in enacting section 995 to eliminate prosecutions without any rational bases must not be frustrated in such fashion.

[7]Consideration of petitioner's additional contention that the diversion statute unconstitutionally contravenes the separation of powers principle is not required in view of our dispositive ruling in *Sledge* v. *Superior Court, supra,* 11 Cal.3d 70.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction." (*People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61-62 [113 Cal.Rptr. 21, 520 P.2d 405].) Today's decision frustrates this purpose by encouraging a potential addict to refuse participation in the program unless and until his suppression motion is denied and the denial upheld on pretrial review by extraordinary writ. However, in reality, his search and seizure claim has no bearing on his need for treatment.

The other fundamental purpose of the program is to reduce "the clogging of the criminal justice system by drug abuse prosecutions and thus [enable] the courts to devote their limited time and resources to cases requiring full criminal processing." (*People* v. *Superior Court (On Tai Ho)*, *supra*, 11 Cal.3d at pp. 61-62; fn. omitted.) However, if a defendant is given the alternative of entering the diversion program following denial of his suppression motion in the superior court, conservation of judicial resources will be negligible because defendants in drug prosecutions usually plead guilty following unsuccessful suppression motions—legality of the search and seizure being the only issue worth contesting in most cases.

McComb, J., concurred.