[Crim. No. 14084. First Dist., Div. One. Dec. 11, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBUR J. KOESTER, Defendant and Appellant.

632

---

**COUNSEL**

Keogh, Marer & Flicker, Michael R. Flicker and Gerald Z. Marer for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and M. Janice Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**LAZARUS, J.**\*—There is but one issue for determination on this appeal. Did the trial court properly rule that because appellant was charged with violating Health and Safety Code section 11368 (issuing fictitious prescriptions for narcotic drugs) he is not eligible for diversion as a drug offender to a treatment and rehabilitation center under Penal Code sections 1000-1000.4[1] as a matter of law?

From the record before us appellant, an orthopedic physician and surgeon with an otherwise unblemished record, would appear to be the kind of person who would be most likely to benefit from this salutary program. ▪ But since it is our function to interpret statutory laws, not to change them, we must of necessity reach the same conclusion as did the trial judge.

Appellant was charged in a complaint filed in the municipal court with violating the following sections of the Health and Safety Code: Possession of a controlled substance (hycomine) in violation of section 11377; possession of a controlled substance (percodan) in violation of section 11350; issuance of a fictitious prescription in violation of section 11368; obtaining a controlled substance by false name and address in violation of section 11174; and prescribing a controlled substance for one not under treatment in violation of section 11154.

Prior to the preliminary hearing, Koester made a motion that he be admitted to a diversion program under section 1000 of the Penal Code. At the hearing on this motion, and after reviewing defendant's file, the district attorney determined that appellant was not eligible and refused to initiate diversion proceedings. This, although the municipal court judge was of the opinion that the defendant was an excellent candidate for this program.[2] The judge reached the conclusion, therefore, that he had no discretion under the statute as it now reads, and denied the

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]These provisions were enacted in 1972 to permit a trial court under specified circumstances to divert prosecution of certain first offenders charged with narcotic crimes from the normal criminal processes for treatment and rehabilitation, and, if this is successful, to dismiss the charges.

[2]The municipal court judge stated, ". . . I think he should be diverted. . . . I think if anybody qualifies for diversion, I think it's the defendant in this case. . . . Now here is a fellow that as far as I'm concerned, I see every reason for trying to rehabilitate him. But we don't want to because we are going to be technically obnoxious about it."

motion. Defendant was then held to answer. The district attorney subsequently filed an information in the superior court in two counts, charging appellant with violating Health and Safety Code section 11350, possession of a controlled substance, and with violating Health and Safety Code section 11368, obtaining a controlled substance by a forged or fictitious prescription.

Appellant renewed his motion to institute proceedings for diversion under Penal Code section 1000 in the superior court where it was denied with similar reluctance but for the same reason that it had been originally denied in the municipal court. The court, however, accepted a plea of nolo contendere to the section 11368 count, dismissing the count charging a violation of section 11350. In accordance with his authority under Penal Code section 17, however, the judge deemed the section 11368 offense to be a misdemeanor, placing the defendant on probation for two years, and ordering him to pay a $1,000 fine. As a further condition of probation, he was ordered to participate in a psychiatric or psychological program to be approved by the probation officer.

From the evidence at the preliminary hearing it appears that the appellant over a period of time wrote a number of fictitious prescriptions for hycomine and percodan intended for his own use. The prescriptions were drafted in the names of other people, some of whom were his patients, and he would then personally take them to a pharmacy and have them filled. It was conceded by the People that there was not even an iota of evidence that the defendant had ever trafficked in drugs or that he procured the prescription drugs for anyone other than himself.

In addition, the People acknowledged that *appellant met all of the requirements for eligibility for diversion under Penal Code section 1000 except that listed in subdivision (a)(3).*[3] In other words, it was admitted

---

[3]Penal Code section 1000 reads as follows: "(a) This chapter shall apply whenever a case is before any court upon an accusatory pleading for violation of Section 11500, 11530, 11555, 11556, 11910, or 11990 of the Health and Safety Code and it appears to the district attorney that all of the following apply to the defendant: [¶] (1) The defendant has no prior conviction for any offense involving narcotics or restricted dangerous drugs. [¶] (2) The offense charged did not involve a crime of violence or threatened violence. [¶] (3) There is *no evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision.* [¶] (4) The defendant has no record of probation or parole violations. [¶] (b) The district attorney shall review his file to determine whether or not paragraphs (1) to (4), inclusive, of subdivision (a) are applicable to the defendant." (Italics added.)

Sections 11500, 11530, 11555, 11556, 11910, and 11990 of the Health and Safety Code were repealed by Statutes 1972, chapter 1407, sections 2, 4, 6. These sections now are 11350, 11357, 11364, 11365, 11377 and 11383 respectively. (See table preceding Health & Saf. Code, § 11000.)

that appellant had no prior conviction for any offense involving narcotics or restricted drugs, that he has no record of probation or parole violations, and that the offense charged did not involve a crime of violence or threatened violence. What the People do say, however, is that because appellant obtained the drugs by fictitious prescriptions, a violation of Health and Safety Code section 11368, he was ineligible for diversion under Penal Code section 1000, subdivision (a)(3) which requires that there must be no evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections of the Health and Safety Code specifically mentioned in the first paragraph of subdivision (a). *Section 11368 is not therein listed.*

The municipal court judge who denied the original section 1000 Penal Code motion felt that he had no discretion to do otherwise, not only because of the refusal of the district attorney to initiate diversion proceedings,[4] but also because of the strict interpretation given to this section in *People v. Cina* (1974) 41 Cal.App.3d 136 [115 Cal.Rptr. 758] (an authority to be hereinafter referred to and discussed).

The social philosophy and purposes that led to the enactment of Penal Code sections 1000 to 1000.4 have been described by the Supreme Court as follows: "Penal Code sections 1000 to 1000.4, enacted in 1972, authorize the courts to 'divert' from the normal criminal process persons who are formally charged with first-time possession of drugs, have not yet gone to trial, and are found to be suitable for treatment and rehabilitation at the local level. The purpose of such legislation, which has recently been adopted with variations in several of our sister states, is two-fold. First, diversion permits the courts to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction. Second, reliance on this quick and inexpensive method of disposition, when appropriate, reduces the clogging of the criminal justice system by drug abuse prosecutions and thus enables the courts to devote their limited time and resources to cases requiring full criminal

---

[4]In *Sledge v. Superior Court* (1974) 11 Cal.3d 70 [113 Cal.Rptr. 28, 520 P.2d 412], the Supreme Court held that in making a preliminary determination as to eligibility for diversion the district attorney is not exercising judicial powers. His decision as to whether there was "evidence" of other narcotic violations may not therefore be subject to an interlocutory review by writ of mandate or prohibition. (*Id.* at p. 75.) It is not immune from judicial review, however, but the question is one that can be raised only on appeal after a trial and conviction. (*Id.* at p. 76.)

processing. (See Robertson, *Pre-trial Diversion of Drug Offenders: A Statutory Approach* (1972) 52 B.U.L.Rev. 335, 336-337; Note, *Addict Diversion: An Alternative Approach for the Criminal Justice System* (1972) 60 Geo.L.J. 667, 672-673.)" (*People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61-62 [113 Cal.Rptr. 21, 520 P.2d 405].)

We are here ultimately called upon, therefore, to resolve a dispute over the proper construction of Penal Code section 1000, in particular subdivision (a)(3), having in mind the above stated principles. Basically, the People urge a strict construction of the statute, arguing that because appellant obtained drugs for his own use by writing fictitious prescriptions, he is ineligible for diversion, as that offense is not one of the enumerated offenses in Penal Code section 1000. Appellant, on the other hand, urges a liberal construction of the statute, arguing that the Legislature intended that the aim of the diversion program is to include broad participation in the program and that the Legislature, by including subdivision (a)(3), meant only to exclude those dealing or trafficking in drugs. Both sides have resourcefully presented convincing arguments, and this issue is not one that is easily resolved.

There is strong support for appellant's contention that the statute is to be broadly construed. In *Sledge* v. *Superior Court* (1974) 11 Cal.3d 70, 75 [113 Cal.Rptr. 28, 520 P.2d 412], the Supreme Court expressed the view that: "Subsection (3) is intended by the Legislature to render ineligible for the diversion program a relatively limited class of persons, i.e., *those who are dealing in illegal narcotics* but who have never previously been convicted of any drug offense and whom the district attorney cannot or does not choose to charge with trafficking. The statute specifies there must be 'evidence' that the defendant is a member of that class before he can be excluded. 'Evidence,' of course, means more than mere suspicion or rumor; it means, in this context, reports of actual instances of trafficking or other information showing that the defendant has probably committed narcotics offenses in addition to those listed in the statute." (Italics added.)

In *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 158 [118 Cal.Rptr. 14, 528 P.2d 1157], our highest court stated, "The entire tenor of the diversion statute is one of liberal experiment. Reference to its legislative history reveals that it is only one part of a comprehensive drug treatment program adopted by the Legislature. . . . We therefore deem it reasonable that the Legislature's overriding purpose was to facilitate its broader aim of conducting an unusually liberal experiment in rehabilita-

tion by encouraging the *broadest possible participation* in the drug treatment programs." (Italics added.) In addition, *Morse,* at page 159, paraphrased subdivision (a)(3) as requiring that the case involve " 'no evidence' of defendant's commission of other *more serious* drug offenses." (Italics added.)

In that case a defendant charged with possession of marijuana was advised by the district attorney that he qualified for diversionary treatment and was entitled to consent thereto. Instead, at that time he entered a not guilty plea, and moved to suppress the evidence against him. After that motion was denied he then advised the court that he wished to consent to diversion. The trial judge ruled that the defendant had elected to be prosecuted in the criminal court when he made his motion to suppress the evidence. The governing statute was Penal Code section 1000.1 which provides in part that "If the defendant consents and waives his right to a speedy trial the district attorney shall refer the case to the probation department."

The Supreme Court granted defendant's petition for a writ of mandate, referring to the principle that "Penal Code sections must generally be construed ' "according to the fair import of their terms, with a view to effect its objects and to promote justice." ' [Citation.]" (*Morse* v. *Municipal Court, supra,* 13 Cal.3d 149 at p. 156.) It held that the statute must therefore be liberally construed to mean that a defendant who is otherwise eligible may consent to diversion and waive his right to a speedy trial at any time before a trial actually commences.

But, as respondent correctly maintains, neither *Sledge* nor *Morse* is factually in point.

We come then to *People* v. *Fulk* (1974) 39 Cal.App.3d 851 [114 Cal.Rptr. 567], in which the appellant was charged with possession of marijuana (Health & Saf. Code, § 11530 (now § 11357)), and with driving under the influence of liquor or the combined influence of liquor and a drug (Veh. Code, § 23102). The district attorney had determined that the diversion statute was inapplicable to the defendant solely because he was charged with violation of section 23102 of the Vehicle Code, in addition to the possession charge. The court stated (at p. 855) that the district attorney had read into the statute "a requirement not expressly stated therein—that the defendant must be before the court on an accusatory pleading charging one of the specified crimes, *and no other crime.*" It held this view to be incorrect but since there was no evidence that

appellant was driving under the influence of anything other than alcohol, added the following comment: "We note at the outset that, had there been evidence that appellant was driving under the influence of a *drug,* he would have been ineligible for diversion under subsection (3) of subdivision (a) of section 1000, which disqualifies a defendant where there is 'evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision.' There was no such evidence, however; and the district attorney did not rely on this theory in stating that diversion was inapplicable." (Italics added.)

These comments were purely dicta, but nevertheless indicate that the *Fulk* court was of the view that a defendant charged with a divertible offense would not be eligible for diversion under Penal Code section 1000, subdivision (a)(3), if there was evidence that he was driving an automobile under the influence of drugs, i.e., a violation of Vehicle Code section 23102, an offense which, like Health and Safety Code section 11368, is not one of the offenses listed in subdivision (a) of Penal Code section 1000.

When we reach *People* v. *Cina, supra,* 41 Cal.App.3d 136, however, appellant appears to be confronted with a more difficult obstacle in the way of authority that must be overcome, since the issue as to whether evidence of a narcotic violation other than those listed in Penal Code section 1000, subdivision (a)(3), viz., cultivation of marijuana (Health & Saf. Code, § 11358, former Health & Saf. Code, § 11530.1) was directly involved in that case. There Cina contended, as does appellant here, that "the evidence shows only cultivation for personal use and the statute should be liberally construed to promote its objective of restoring first-time non-trafficking drug offenders to productive citizenship without the lasting stigma of a criminal conviction." (*Id.* at p. 139.) The People argued, on the other hand, that the statute could not be invoked because of evidence of a narcotic violation other than one of those enumerated in Penal Code section 1000.

The *Cina* court felt that the charge of cultivating marijuana in the case from which the appeal arose was an extremely weak one, resting solely on evidence as to home cultivation of three marijuana plants in a back yard garden. It regarded the infraction as being so petty in the total context of drug trafficking that it even gratuitously suggested that it appeared to be a proper one for dismissal in the interest of justice under Penal Code section 1385. As to why this may not have been an offense

that the Legislature deemed should be listed in Penal Code section 1000, subdivision (a), however, it had this to say at page 140: "The Legislature could have rationally concluded that because cultivation of marijuana is often associated with trafficking in narcotics and normally carries a higher degree of culpability than simple possession, the cultivator should not be entitled to the benefits of diversion proceedings."

It therefore felt compelled to issue a peremptory writ of mandate directing the trial court to set aside its order diverting Cina on the possession charge and continuing proceedings on the cultivation charge for one year.

Following *Cina,* the Legislature passed and the Governor signed a bill which amends Penal Code section 1000 et seq. (Assem. Bill No. 1274; Stats. 1975, ch. 1267, p. 3561 et seq. effective Jan. 1, 1976), adding Health and Safety Code section 11358 to the list of eligible offenses "if the marijuana planted, cultivated, harvested, dried, or processed is for personal use, . . ." It also added to the eligible list Health and Safety Code section 11550 (being under the influence of narcotic drugs), Penal Code section 381 (inhaling poisonous fumes with intent to become intoxicated), Penal Code section 647, subdivision (f) (disorderly conduct in a public place, if for being under the influence of a controlled substance), and section 4230 of the Business and Professions Code (possession of controlled drugs without a prescription).[5]

The amendments indicate that the Legislature has been responsive to the court decisions, and tend to support the view that the Legislature intended "to render ineligible for the diversion program a relatively limited class of persons, i.e., those who are dealing in illegal narcotics . . ." (*Sledge* v. *Superior Court, supra,* 11 Cal.3d 70 at p. 75) rather than those whose offenses relate only to personal use of drugs.[6] Unfortunately

---

[5]The following is the text in part of the amended statute: "1000. (a) This chapter shall apply whenever a case is before any court upon an accusatory pleading for violation of Section 11350, 11357, 11364, 11365, 11377, or 11550 of the Health and Safety Code, or Section 11358 of the Health and Safety Code if the marijuana planted, cultivated, harvested, dried, or processed is for personal use, or Section 381 or subdivision (f) of Section 647 of the Penal Code, if for being under the influence of a controlled substance, or Section 4230 of the Business and Professions Code, . . ."

[6]The People cite extensively and appellant asks us to disregard the case of *People* v. *Campbell* (Cal.App.). Hearing on *Campbell* was denied on June 26, 1975, and the Reporter of Decisions was directed not to publish the opinion in the Official Appellate Reports.

As a matter of interest *only,* it is noted that in *Campbell,* the defendant was charged with possession of a controlled substance (Health & Saf. Code, § 11350). His motion for

for the appellant here, however, the Legislature has not yet seen fit to add Health and Safety Code section 11368 to the list of eligible offenses.

Appellant earnestly argues that he is eligible for diversion because a violation of Health and Safety Code section 11368, a nonenumerated offense, is "less serious" than a violation of Health and Safety Code section 11350. As authority he cites *Morse* v. *Municipal Court, supra,* 13 Cal.3d 149 at page 159, wherein the court paraphrased subdivision (a)(3) of Penal Code section 1000 as requiring "that the case involve 'no evidence' of defendant's commission of other more serious drug offenses. . . ."

Appellant argues that section 11350, which is a divertible offense, is a straight felony punishable by from two to ten years in prison. By contrast, section 11368, which is not listed as a divertible offense, is an alternative felony-misdemeanor, punishable by imprisonment in the county jail for not less than six months nor more than one year, or in the state prison for not more than six years.

Both the municipal court judge and the superior court judge rejected appellant's argument that the 11368 offense was less serious than the 11350 offense.

The municipal court judge stated: "The sophistication of the whole line of conduct is not that of a misdemeanor offense. The rather staggering legal and factual questions involved in this case concerning [*sic*] a sophisticated course of conduct extending over a period of time by a remarkably intelligent man. Any man who finishes medical school and is licensed to practice medicine is an intelligent person. None of this goes together to appear a misdemeanor in the Court's mind. And the motion to declare 11368 a misdemeanor under [Pen. Code, §] 17 and order the defendant to proceed on such charge only is denied."

The superior court judge stated, "The argument on the fact that the 11368 . . . is a lesser type offense than the straight possession because it carries a lesser penalty, I don't think that follows. I think in a type of charge such as 11368, I find the factual situation to be serious or much

diversion was denied because there was evidence that he was under the influence of heroin (Health & Saf. Code, § 11550), a narcotics or restricted dangerous drugs violation not listed in Penal Code section 1000. The Court of Appeal affirmed the denial of his motion.

The amended version of Penal Code section 1000 added Health and Safety Code section 11550.

more serious than possession. . . . But, I still think the nature of the charge is more serious than straight possession so I can't accept your argument that the Legislature must have intended to have such a charge considered or allowed. The Court is to consider it on that basis. I find it to be a much more serious charge than the 11350."

Appellant also argues that it is obvious that anyone who illegally possesses a controlled substance must necessarily have obtained possession in one of four illegal ways: Manufacture or cultivation, theft, purchase on the black market, or misuse of prescription. He argues that the means of obtaining the controlled substance is not important to the Legislature, unless those were in some way connected with trafficking by the possessor.

Although appellant's arguments are persuasive, it is difficult to ignore the plain meaning of the statute. Furthermore, several rules of statutory construction prevent a court from reading anything more into the statute than the Legislature has expressly set forth.

"Penal Code sections must generally be construed ' "according to the fair import of their terms, with a view to effect its objects and to promote justice." ' (*In re Smith* (1966) 64 Cal.2d 437, 440 [50 Cal.Rptr. 460, 412 P.2d 804].) Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. (E.g., *People* v. *Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675], emphasizing that the plain meaning of words used is not to be disregarded.)" (*Morse* v. *Municipal Court, supra,* 13 Cal.3d 149 at p. 156.) In addition, *Morse* (at p. 159) noted the maxim that "mention of one thing implies exclusion of another."

In *Wisdom* v. *Eagle Star Ins. Co.* (1963) 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599], the court noted "the elementary principle that the judicial function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted, or omit what has been inserted. (Code Civ. Proc., § 1858.) Courts cannot depart from the meaning of language in a statute which is free from ambiguity, even though the consequence would be to defeat the object of the statute. [Citation.]" (See also *Anderson* v. *I. M. Jameson Corp.* (1936) 7 Cal.2d 60, 68 [59 P.2d 962].)

Also *Morse* appears to recognize that a court cannot interpret the statute in a manner that would ignore the restrictive conditions actually written into it. "Another applicable canon requires us to construe a Penal Code provision as favorably to the defendant as its language and the circumstances of its application may reasonably permit. (E.g., *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) An interpretation of the diversion provisions which holds the opportunity for diversion free from restrictive conditions *not actually written into the [statute]* by the Legislature is surely more consistent with that rule of construction than the interpretation urged by the People." (*Morse* v. *Municipal Court, supra,* 13 Cal.3d 149 at p. 159, italics added.)

■ The statute enumerates only certain "divertible" offenses and we must conclude that by listing these it meant to exclude others. The revised version of Penal Code section 1000 by continuing to list the "divertible" offenses indicates an intent to continue this approach instead of adopting a broader one that might have been suggested to it by the language of *Sledge* v. *Superior Court, supra,* 11 Cal.3d 70 at page 75.

"It must be assumed that the legislature was cognizant of the correct meaning and use of the terms and that it drafted its enactment in the light of the code provisions and decisions of the courts of this state relating thereto, . . ." (*Anderson* v. *I. M. Jameson Corp., supra,* 7 Cal.2d 60 at p. 67.)

■ Appellant's final contention is that there is neither a rational basis nor a compelling state interest for excluding from the diversion program cases involving possession for personal use in which there is evidence of obtaining possession by a fictitious prescription. "This is so," appellant urges, "because there is no rational basis for distinguishing between the class of persons charged with possession who are divertible and the class of persons which includes appellant who have obtained possession by misuse of prescriptions."

Respondent's reply is that there are several rational theories on which the Legislature could have determined to exclude an offense under Health and Safety Code section 11368. For example, the Legislature reasonably could have concluded that fictitious prescriptions are often associated with trafficking in narcotics and that they afford an easy and relatively detection-free means of drug procurement.

Another rational basis on which the Legislature could have determined to exclude an offense under Health and Safety Code section 11368 is that the Legislature may have considered this a particularly dangerous means of potential abuse of the system depended upon by the medical profession and the general public whereby various drugs may be obtained with relative ease for valid purposes.

It is also possible that the Legislature did not include Health and Safety Code section 11368 among the sections listed in Penal Code section 1000 simply because it never thought of it. It may well be that if the facts of this case are called to its attention, it may include this section in a further amendment to section 1000, where the restricted drugs were intended for personal use, just as it did after the decision in *People* v. *Cina, supra,* 41 Cal.App.3d 136.

In light of the general purpose of Penal Code section 1000 et seq., it could have been reasonably concluded, absent authority to the contrary, that appellant is eligible for diversion. ▮▮ As we construe the case law, however, and mindful of the statutory limitations on our functions as expressed in Code of Civil Procedure section 1858,[7] we feel constrained to hold that this court does not have the authority to extend Penal Code section 1000 beyond the plain words of the statute.

The judgment is therefore affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1976.

---

[7]Our admonishment from this section is: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, *not to insert what has been omitted, or to omit what has been inserted;* and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Italics added.)