Filed 12/18/24  P. v. Greenstreet CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

|  |  |
|---|---|
| THE PEOPLE, | C098601 |
| Plaintiff and Respondent, | (Super. Ct. No. SCCR-CRF-2021-1703) |
| v. |  |
| JEFFERY WARREN GREENSTREET, |  |
| Defendant and Appellant. |  |

Following the denial of his pretrial request for mental health diversion, defendant Jeffery Warren Greenstreet pleaded no contest to three counts of corporal injury on a romantic partner (Pen. Code, § 273.5, subd. (a));[1] one count of criminal threats (§ 422, subd. (a)); and one count of misdemeanor violating the criminal protective order (§ 166, subd. (c)(1), subd. (a)); defendant also admitted he had caused great bodily injury

---

[1]     Undesignated statutory references are to the Penal Code.

1

(§ 12022.7, subd. (e)) in the commission of two counts, had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12); and had a circumstance in aggravation justifying the upper term. In exchange, defendant received an agreed-upon aggregate prison sentence of 15 years. Defendant appeals, arguing the trial court abused its discretion in denying his request for mental health diversion (§ 1001.36) because (1) he was eligible for relief, and (2) he was not an unreasonable danger to public safety. We need only address defendant's second argument because we find substantial evidence supports the trial court's determination that defendant was unsuitable for mental health diversion (§ 1001.36, subd. (c)(4)). Accordingly, we will affirm.

BACKGROUND

The People's March 2022 information charged defendant with inflicting corporal injury on a romantic partner (§ 273.5, subd. (a); counts 1, 3, and 6); criminal threats (§ 422, subd. (a); count 2); assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 4); false imprisonment by violence (§ 236; count 5); and contempt of court for violating a criminal protective order (§ 166, subd. (c)(1); count 7). The information further alleged as to counts 1 and 6 that defendant had inflicted great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)), and as to counts 1, 3, and 6, that defendant had personally inflicted great bodily injury (§ 12022.7, subd. (a)). The information also alleged as to counts 1 through 6: that defendant had suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12); that these same convictions qualified as serious felonies (§ 667, subd. (a)); and that defendant was ineligible for probation (§ 1203, subd. (e)(4)). Finally, the complaint alleged multiple aggravating sentencing factors.

On November 7, 2022, defendant filed an application for mental health diversion (§ 1001.36) arguing he was charged with qualifying offenses, currently suffered from post-traumatic stress disorder (PTSD) that played a significant role in the offenses, and had begun his first attempt at treatment during his present incarceration. If granted

2

mental health diversion, defendant had been accepted into a yearlong treatment program at the Eureka Rescue Mission.

On January 9, 2023, the People filed an informal written response opposing defendant's application because defendant was "a violent, manipulative, lifetime intimate partner abuser." Defendant's violent history began with his conviction at age 21 for battery against his then-girlfriend, B.M.[2] (§ 243, subd. (e)(1)). During that relationship, defendant broke B.M.'s nose, repeatedly strangled her, and on one occasion, B.M. thought " 'he almost killed' " her. In 2008, defendant was convicted of the following crimes against a different victim, C.B.: stalking while released from custody on another felony (§§ 646.9, subds. (a), (b), 12022.1); burglary while released from custody on another felony (§§ 459, 12022.1); three counts of corporal injury on a romantic partner (§ 273.5, subd. (a)); battery against a romantic partner (§ 243, subd. (e)(1)); dissuading a witness from testifying (§ 136.1); and contempt of court for violating a protective order (§§ 166, subd. (c)(1), 273.6, subd. (a)). Defendant repeatedly violated C.B.'s protective order (including threats about testifying against him); he also strangled her and pinned her down prior to striking her. Defendant received five years of felony probation with a 12-year suspended sentence and violated his probation on the first day by calling C.B. from jail. Defendant later admitted six separate contempt violations (§ 166, subs. (b)(1), (c)(1)) wherein he used others in an attempt to conceal his contacts with C.B. Following defendant's release from custody, but before he reported to prison, he committed additional offenses against C.B., including corporal injury on a cohabitant or romantic partner[3] (§ 273.5, subd. (a)) and contempt of court for violating a criminal protective

---

[2] To protect their privacy, we refer to the victims by their initials. (Cal. Rules of Court, rule 8.90(a)(1), (b)(4).)

[3] During this attack, defendant strangled C.B. " 'almost to the point of blacking out.' "

order (§§ 166, subd. (c)(4), 273.6, subd. (a)). Defendant also committed a burglary (§ 459).

Defendant was released on parole in May 2019, but absconded in August 2021. Defendant committed the instant offenses while on parole from domestic violence convictions against C.B. He was charged with violent conduct against D.W., he strangled her to the point where " 'things were starting to go black' " and had beat her so severely that he had fractured multiple bones in her body; defendant also repeatedly violated the protective order forbidding his contact with her. Accordingly, the People urged the trial court to deny defendant's petition for diversion.

On January 30, 2023, defendant further supplemented his request for mental health diversion with materials relevant to his proposed treatment plan, including more information about his proposed treatment provider.

On April 6, 2023, the trial court held a hearing on defendant's mental health diversion request. Defendant argued his written submissions established the court should grant his request for diversion, summarizing that defendant had never previously received treatment, had been drug-free in custody, and had shown that he was amenable to treatment for his substance abuse and PTSD. Defendant also testified at the hearing that he had served over 10 years in prison for an offense that occurred when he was 28 years old, suffered from PTSD, and wanted the opportunity to engage in the yearlong drug and alcohol treatment program he had been accepted into.

In response, the People argued defendant's criminal history was longer than he represented; he had violated his probation by disobeying a criminal protective order the day he was placed on probation prior to being sent to prison, and he was not fit for mental health diversion because defendant could not "refrain from being violent."

Thereafter, the trial court noted the statute in effect had a rebuttable presumption that defendant's diagnosed mental disorder had a relationship to the crime, and although the court failed to see the evidence of that relationship, defendant's expert stated his

4

PTSD was likely related to the crime. Defendant also presented a proposed treatment plan to address his problems, though the PTSD appeared secondary to defendant's substantial drug abuse problems. Moreover, defendant had been unsuccessful in a prior grant of probation, and finally, the court noted defendant had a "long history of violence," which the court found relevant in considering his risk to the community vis-à-vis crimes delineated in section 1170.18. Considering the totality of the circumstances, the court concluded defendant was not "a suitable candidate for diversion." Accordingly, the court denied the petition.

The parties then held a settlement conference, and defendant agreed to resolve the matter by pleading no contest to three counts of corporal injury on a romantic partner (§ 273.5, subd. (a); counts 1, 3, and 6), one count of criminal threats (§ 422, subd. (a); count 2), and one count of misdemeanor violation of the criminal protective order (§ 166, subd. (c)(1), subd. (a); count 7). Defendant also admitted he caused great bodily injury (§ 12022.7, subd. (e)) in the commission of counts 1 and 6, suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), and a circumstance in aggravation justified an upper term. In exchange, defendant would receive an agreed-upon aggregate prison sentence of 15 years.

The factual basis for defendant's plea was the preliminary hearing transcript. According to testimony at that hearing, D.W. spoke with Deputy William Strelow of the Siskiyou County Sherriff's Office on July 30, 2021. D.W. complained that defendant, her boyfriend, punched her in the left eye. Deputy Strelow observed the victim's eye was swollen shut. Medical records showed D.W. had suffered a moderately displaced fracture of her left orbital floor.

On October 31, 2021, D.W. reported two other incidents of domestic violence to Deputy Cody Ruddell of the Siskiyou County Sheriff's Office. She told him that on October 27, 2021, defendant argued with her and accused her of cheating on him. Enraged, he grabbed D.W. by the throat, pinned her to the bed, and strangled her for

5

approximately 30 seconds to the point that her vision was turning black. In an effort to get defendant to stop, D.W. hit defendant in the face, and he responded by punching her with a closed fist in the left side of her mouth. D.W. also reported that the next morning after dropping her children off at school, defendant again accused D.W. of infidelity. D.W. admitted to cheating on him, and defendant threatened he would "hit [D.W.] so hard she would shit and piss her pants." He then hit her three times in the face; first to the right side, then to the temple area. D.W. could not recall where the third blow landed, but she did remember that defendant pulled out some of her hair. Consistent with D.W.'s complaints, Deputy Ruddell observed signs of strangulation, a black eye, and bruising of her lip. D.W. also complained of pain to her pinky finger. Medical records established D.W. had suffered two fractures of her finger and a closed fracture of a nasal bone.

Finally, the trial court took judicial notice of D.W.'s criminal protective order issued on March 7, 2022, following Deputy Strelow's testimony that defendant called her 14 different times from jail after the issuance of that order.

The probation department's presentence report filed May 9, 2023, confirmed many of the details from the preliminary hearing transcript, but added that D.W. had previously ended her 18-month relationship with defendant and was in the process of picking items up from their shared apartment in July 2021 when defendant attacked her. During that altercation, defendant threatened "since he was going back to go back to prison. . . he was going to finish the job." Nonetheless, D.W. managed to escape. She resumed her relationship with defendant approximately two months later. The report also relayed defendant's extensive history of criminal convictions from 2000, 2008, 2009, and 2010. Finally, the report relayed that defendant's score on the Ontario Domestic Assault Risk Assessment tool was in the highest risk category.

On May 9, 2023, the trial court sentenced defendant in accordance with his plea agreement. Defendant timely appealed and was ultimately granted a certificate of probable cause.

6

DISCUSSION

Whether a defendant should be granted mental health diversion under section 1001.36 is a two-step inquiry, requiring the trial court to find a defendant both eligible and suitable for the program. "Since . . . a trial court may deny a motion for diversion on the basis of either suitability or eligibility, if the court determines that the defendant or offense is not suitable, it makes no difference whether the defendant is eligible." (*People v. Bunas* (2022) 79 Cal.App.5th 840, 860, italics omitted.)

"An order denying diversion is a preliminary determination . . . which is subject to review on appeal from a judgment in the criminal proceedings." (*Morse v. Municipal Court for San Jose-Milpitas Judicial Dist.* (1974) 13 Cal.3d 149, 155.) "A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147; see *People v. Moine* (2021) 62 Cal.App.5th 440, 448-450; *People v. Oneal* (2021) 64 Cal.App.5th 581, 588.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Graham* (2024) 102 Cal.App.5th 787, 795 (*Graham*).)

Thus, although defendant challenges the trial court's determinations on eligibility and suitability, this court may dispose of the appeal by deciding whether there is substantial evidence supporting the trial court's finding that defendant was unsuitable for diversion because of its implicit determination that defendant "pose[d] an unreasonable risk of danger to public safety." (§ 1001.36, subd. (c)(4).)

As another panel of this court recently explained: "Whether a defendant would pose an 'unreasonable risk of danger to public safety' is analyzed employing the definition of that term found in section 1170.18. (§ 1001.36, subd. (c)(4).) Under section 1170.18, an ' "unreasonable risk of danger to public safety" ' is 'an unreasonable risk that

7

the petitioner will commit a new violent [super strike].'  (§ 1170.18, subd. (c).)"
(*Graham, supra*, 102 Cal.App.5th at pp. 798-799.)  Such offenses are delineated in
"clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."
(§ 1170.18, subd. (c).)  This portion of section 667 enumerates offenses commonly
known as "super strikes," which include any homicide offense, including attempted
homicide (§§ 187-191.5), solicitation to commit murder (§ 653f), and any serious or
violent felony punishable by life imprisonment or death.  (§ 667, subd. (e)(2)(C)(iv).)

To deny mental health diversion to an otherwise eligible defendant, a trial court
must find the defendant is likely to commit one of these enumerated super strike offenses.
(*People v. Moine, supra*, 62 Cal.App.5th at p. 450; accord, *Graham, supra*,
102 Cal.App.5th at p. 799 ["a defendant is not suitable for diversion if the defendant is
'too dangerous to be treated in the community because he [or she] would commit a new
violent super strike' "].)  "When determining whether the defendant will pose an
unreasonable risk of danger to public safety, '[t]he court may consider the opinions of the
district attorney, the defense, or a qualified mental health expert, and may consider the
defendant's treatment plan, the defendant's violence and criminal history, the current
charged offense, and any other factors that the court deems appropriate.'  (§ 1001.36,
subd. (c)(4).)"  (*Graham,* at p. 799.)

Here, defendant argues upholding the trial court's discretionary determination that
he was not suitable for diversion "would mean that defendants with a modest history of
domestic abuse would never be suitable (albeit perhaps still eligible) for mental health
diversion because one may reasonably concede that they are potential murderers,
wielders of machine guns or weapons of mass destruction, sexually violent offenders
and/or child molesters."  We are not persuaded.

Defendant's criminal history as outlined *ante* cannot reasonably be characterized
as "modest."  Defendant repeatedly and over the course of two decades has shown his
propensity to strangle (often nearing the point of unconsciousness) and beat his romantic

partners (often breaking their bones). Accordingly, we find substantial evidence for the trial court's determination that defendant had "a long history of violence."

Nor had defendant demonstrated an ability to follow the parameters of any diversion. Quite to the contrary, defendant continually violated protective orders seeking to curb his domestic violence by repeatedly contacting the victims of his crimes, both personally and through others. Similarly, defendant violated his prior probation by repeatedly contacting his victim C.B. and ultimately abusing her again prior to being sent to prison for 12 years.

Finally, that defendant posed an unreasonable risk of committing a super strike is supported by defendant threatening his latest victim D.W. that he was going to beat her to the point that she would lose control of her bodily functions, to wit, that she "would shit and piss her pants." This implies a willingness to inflict extreme violence that could reasonably result in a murder or attempted murder.

Therefore, we conclude there was substantial evidence supporting the trial court's determination that defendant was unsuitable for diversion because of its implied finding that defendant presented an unreasonable risk of committing a super strike offense.[4] Accordingly, the trial court did not abuse its discretion in denying his request for diversion. (*Graham, supra*, 102 Cal.App.5th at p. 795.)

---

[4]     We find the presentencing report also supportive of this conclusion. According to that report: (1) defendant told D.W. during a July 2021 fight (before she escaped) that "since he was going to go back to prison. . .he was going to finish the job," and (2) the Ontario Domestic Assault Risk Assessment described therein placed defendant in the highest risk category for future assault occurrence, frequency, and severity of violence. However, these materials were not before the court at the time of its challenged determination.

9

DISPOSITION

The judgment is affirmed.

                                \s\                  ,

                                Krause, J.

We concur:

    \s\             ,

Duarte, Acting P. J.

    \s\             ,

Wiseman, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.